I respectfully dissent from that portion of the majority decision which allows compensation for an alleged neck injury. I would reverse the Deputy Commissioner's Opinion and Award in part on the grounds that the greater weight of the evidence demonstrates that plaintiff's testimony is not credible as to the causal relationship between her alleged cervical problems and her compensable injury.
Plaintiff testified that sometime in April 1994, she was injured while undergoing physical therapy when the therapist jerked or pulled her by the neck. The majority has reasoned that this incident resulted in plaintiff sustaining a cervical injury causing permanent disability and headaches for which she is due compensation under the Act. A comprehensive reading of plaintiff's testimony and the medical evidence demonstrates a sufficient number of inconsistencies regarding the onset and cause of plaintiff's condition, if not its existence, to justify denying compensation.
On 28 April 1994, plaintiff presented to Dr. Moriarty. This visit marks the first instance of complaints of headaches, but there is nothing in his notes which refers to an incident of being jerked or pulled during physical therapy, nor is there any mention of cervical pain or discomfort. On 22 December 1994, plaintiff presented to Dr. Moriarty with complaints of problems resulting from her physical therapy sessions, but they are limited to wrist pain. In Dr. Moriarty's comprehensive note of 30 August 1995, he notes complaints of headaches on 28 April 1994, but again he does not relate any specific incident as a cause, and there is no mention of their continuation or of any other cervical discomfort at any subsequent examinations until 18 May 1995. During this period plaintiff had returned to work and had continued "to work ardently in physical therapy." Radiographs performed at the 18 May 1995 examination revealed degenerative disk changes at the C-7 vertebrae, as well as at the C-5, and C-6 vertebrae. Again, there was no mention of a specific incident which resulted in injury, but only that there was evidence of degenerative changes.
On 21 August 1995, plaintiff presented to Dr. John G. Potter. While she complained of neck pain, she stated that it had developed gradually over a period of two years. Dr. Potter noted the degenerative disk problems discovered in May 1995, and equated that condition with plaintiff's complaints. Again, it is significant that there is no mention of a specific incident; rather, there is an affirmative statement by plaintiff to the contrary.
Plaintiff continued to see Dr. Moriarty throughout 1995, without additional complaints of either headaches or cervical pain. She did not seek any treatment between 15 December 1995 and 16 May 1996. At that examination, for the first time Dr. Moriarty diagnosed plaintiff with a cervical/trapezius strain. This diagnosis came more than two years after the alleged incident, and again, is not accompanied by any allegation of a specific incident which caused the problem. Further, there is nothing in any of plaintiff's medical history in which a specific incident during physical therapy is alleged to have resulted in cervical discomfort. The first mention of such an occurrence is found in plaintiff's testimony before the Deputy Commissioner, approximately two and one half years after the alleged incident.
Given the lack of medical evidence to support a specific trauma to plaintiff's neck, as well as her own contradictory statements to her physicians, the undersigned cannot logically conclude that there is a causal relationship between plaintiff's cervical complaints and her compensable injury. Accordingly, I would vote to reverse that portion of the Deputy Commissioner's Opinion and Award which provides benefits for a cervical condition.
It should be noted that defendants did not appeal the Salaam
ruling, which is, therefore, left undisturbed.
 S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER